UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

v.                                                      Case Nos.    3:09cr90/LAC/CJK
                                                                     3:13cv84/LAC/CJK

AARON J. BRUNSON
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (Doc. 92).  The Government filed a response and supplemental response (docs. 94, 104), and Defendant has filed a reply, a motion to supplement and an additional reply.  (Docs. 98, 101, 106).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged in a single count indictment with possession of a firearm by a convicted felon. (Doc. 1).  On the evening of his arrest, Defendant was driving his own vehicle and had a passenger whom law enforcement believed may have been an individual who was suspected of attempted murder.  Defendant had stopped his car and he and his passenger had exited the vehicle, when law enforcement approached the two men.  After making contact with Defendant and his passenger outside the vehicle, law enforcement determined that Defendant's passenger, Frank Carter, was not the individual they sought.   After running Defendant's identification, deputies also determined that Defendant's license was suspended.  During the encounter with  Defendant, one of the deputies shined his flashlight into Defendant's car, where he observed a bag of marijuana on the floorboard of the vehicle. Upon opening the door, law enforcement discovered a handgun next to the bag of marijuana.  Defendant was arrested and taken to the Escambia County Jail where, after waiving his <u>Miranda</u> rights, he told law enforcement that the drugs and gun were his, and that he had purchased the gun from a "baser" (an individual who uses cocaine base).  Defendant was charged in state court with possession of marijuana, possession of crack cocaine ,and possession of a firearm by a convicted felon.   The latter charge was nolle prossed in light of the instant federal prosecution.

Defendant was originally represented by Joseph Hammons, who withdrew after irreconcilable differences developed.  (Docs. 16, 18, 21).   Attorney Christopher Rabby appeared and filed a motion to suppress soon thereafter.  (Docs. 23, 28). The court denied the motion after response from the Government and a hearing, at which

Defendant testified in his own behalf.  (Docs. 32, 34).  Defendant proceeded to trial, and the jury found him guilty as charged after a one day trial.  (Doc. 43).

A Presentence Investigation Report ("PSR") was prepared prior to sentencing. The PSR reflected a base offense level of 20, a two level increase due to the fact that the firearm was stolen, a four level increase due to Defendant's possession of the firearm in connection with another felony offense, and a two level increase for obstruction of justice.   Defendant's total offense level was 28.  (Doc. 69, PSR ¶¶ 22–32).  With four criminal history points, Defendant's criminal history category was III. (*Id*. at ¶ 37).  Based on these calculations, the applicable guidelines range was 97 to 121 months.

Defendant objected to the application of each of the three adjustments, as well as to the calculation of his criminal history points.  (Doc. 69, PSR ¶¶ 95–112).  The court sustained the defense objection to Defendant's criminal history category, and the applicable guidelines range became 87 to 108 months.  (Doc. 67 at 8–12).  In pronouncing Defendant's sentence of 108 months, the court noted for the record that Defendant's sentence would have been the same regardless of its ruling on Defendant's objections.  (*Id*. at 14).

Defendant appealed, and counsel filed an *Anders* brief dated July 6, 2011 certifying that no meritorious issues could be raised on appeal, and that the only potentially arguable issue was whether the district court erred in denying Defendant's motion to suppress. (Doc. 94, exh. A).  The Eleventh Circuit denied counsel's motion to withdraw and directed counsel to either certify that Defendant's convicted-felon status was presented into evidence before the jury and to cite to the trial record reflecting such, or alternatively to file a merits brief addressing the issue of the

sufficiency of the evidence as well as any other issues that counsel deemed appropriate for inclusion. (ECCA Case 10-11843, order dated Nov. 21, 2011). On February 22, 2012, counsel filed a merits brief arguing that the evidence was insufficient to support Defendant's conviction because the stipulation he had entered into with the Government, that he was a convicted felon, was not published to the jury and admitted into evidence at trial. (ECCA Case no. 10-11843). Counsel did not pursue a challenge to the denial of the motion to suppress. The Eleventh Circuit affirmed Defendant's conviction on July 27, 2012. *United States v. Brunson*, 482 F. App'x 527 (11th Cir. 2012). In its ruling, the court noted that, after jury selection, the Assistant U.S. Attorney informed the court that the parties had entered into a stipulation that Defendant was a convicted felon whose rights had not been restored. Defendant acknowledged the stipulation and by doing so he had therefore waived the right to require the Government to prove his felon status. *Brunson*, 482 F. App'x at 528; doc. 86 at 2.

Defendant timely filed the instant motion to vacate in February of 2013 (doc. 89), followed by an amended motion filed pursuant to court order. (Doc. 92). Defendant raises ten claims in his amended § 2255 motion (henceforth "motion"), which the Government opposes in its entirety.

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.

*Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if a

defendant fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993));

*Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.   *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).   Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Court's Responses to Jury Questions–Grounds One, Five and Eight

Defendant claims in Ground One of his motion that the district court erred when it answered questions posed by the jury during deliberations.   He asserts in Ground Five that trial counsel was constitutionally ineffective for his failure to object to the court's responses, and in Ground Eight that appellate counsel performed deficiently when he failed to raise this issue on appeal.

During the jury's deliberations, it submitted a single written communication to the court, posing two questions.   The jury asked: "Is the confession of owning the weapon evidence?" and "Was the search of the vehicle legal?" (Doc. 66 at 160).   The

Assistant U.S. Attorney ("AUSA"), Randy Hensel, indicated that he thought the court needed to answer both questions in the affirmative.  (*Id.*).  Mr. Rabby, counsel for the defense, noted that the court had ruled the search to be legal and that this was "a question of law that's not for the jury."  (*Id.*).  The court agreed that this was nothing that the jury "legally should be concerned with" but stated that the simplest answer to the question was merely "yes."  (*Id.* at 160–61).  Both counsel concurred with the court's response.

Defendant now asserts that the court violated due process and abused its discretion with its response, and in so doing, denied Defendant a fair trial.  According to Defendant, the court should have merely reread the jury its instructions and instructed the jury to base its decision on the evidence presented.  Alternatively, he asserts that the court should have instructed the jury that if it did not think the search was legal, the jury should find him not guilty.

Of course, a bare claim of trial court error was available to Defendant on direct appeal and as such is procedurally barred.  *Lynn*, 365 F.3d at 1234–35; *Bousley*, 523 U.S. at 621.  Defendant attempts to circumvent the procedural bar by asserting that both trial and appellate counsel were ineffective with respect to this issue.  *See Nyhuis*, 211 F.3d at 1344. Trial counsel, he contends, should have objected to the court's response at the time it was given, and appellate counsel should have raised this issue on appeal.

In considering the substance of Defendant's claim of court error, it appears that Defendant misapprehends the court's statement regarding whether the jury should "legally" be concerned with the issue.  As the court instructed the jury, the jury's role was to judge the facts, and to seek the truth from the evidence in the case.

(Doc. 81 at 10). The jury was not tasked with making a legal determination about the legality of the search. The court had already determined that the "search" was legal by denying the motion to suppress, and therefore, its response to the jury's question accurately reflected the substantive law of the case. *See United States v. Beverly*, 194 F. App'x 624, 628 (11th Cir. 2006) ("As long as a court's original and supplemental charges, when combined, accurately present the substantive law, ordinarily no reversible error exists."). An objection to the answer would not have altered either the answer, or ultimately the outcome of the case, and counsel is not constitutionally ineffective if he declines to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence).

Similarly, to prevail on a claim that appellate counsel was constitutionally ineffective, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal. *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied

to trial counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Counsel is clearly not ineffective for failing to raise a meritless issue on appeal.  *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir.1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  Defendant's assertion of district court error is meritless and as such, he has not shown that appellate counsel was constitutionally ineffective for his failure to pursue this issue on appeal.

In sum, Defendant is not entitled to relief on Grounds One, Five and Eight.

<u>Suppression Issues</u>–Grounds Two, Four and Seven

In Ground Two, Defendant contends that the district judge erred in denying the motion to suppress.  This issue was not raised on appeal, and Defendant also argues in Ground Seven that appellate counsel was ineffective because he failed to pursue the allegedly meritorious fourth amendment issue on appeal.

The basis for Defendant's assertion of error is his contention that the district court misapplied the law regarding investigative stops as set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).  Defendant maintains that law enforcement violated his fourth amendment rights by detaining him well after they had satisfied the purpose of their initial "stop."  At the suppression hearing, the court heard testimony from Escambia County Sheriff's Deputy Richard Vinson, Escambia County Sheriff's Investigator David Brown, as well as Defendant Brunson.  (Doc. 64).  The testimony adduced at the hearing was that deputies did not actually conduct a traffic stop per se, using lights and sirens, but rather that they approached Defendant and his passenger after Defendant had parked the car and the two men were in the process of getting out and walking away from the vehicle.  Deputy Brown asked Defendant if he could speak

to him, explained the reason for the encounter, and asked Defendant for identification.   After running Defendant's identification, Brown discovered that Defendant's driver's license was not valid.  Brown returned to speak with Defendant and advise him that the deputies were not going to give him any trouble with respect to the suspended license, as they were concerned with more serious matters.  Then, however, during Brown's subsequent conversation with Defendant, Officer Vinson shined his light into Defendant's vehicle and spotted marijuana in plain view. Officers asked Defendant for the keys to the car, and Defendant complied.  Vinson opened the door of the vehicle and found a gun in close proximity to the marijuana, at which point Defendant was arrested.  The officers described Defendant's demeanor as calm and cooperative throughout the encounter, with Brown describing Defendant as "really the nicest guy I've ever had to take to jail."  (Doc. 64 at 61).

The Government took the position at the suppression hearing that this was a consensual, low key encounter, and the fact that Officer Brown took Defendant's identification into his possession did not transform the encounter into a detention or custodial situation.  (Doc. 64 at 99).  The defense responded that once the officer had Defendant's license, a reasonable person would not believe he was free to leave, and furthermore that the encounter was not the low key encounter portrayed by officers. (*Id*. at 101).  Defense counsel further argued that pursuant to Defendant's testimony, the tone and content of the officers' communication, both asking him questions and commanding him to stay where he was, transformed the situation into a custodial interrogation from which Defendant was not free to leave. (*Id*. at 102).

The court, considering the testimony of the witnesses and the arguments of counsel, found the officers' version of events to be more credible.  It denied the

motion to suppress finding that "the original approach amounted to a *Terry* stop and that after that point, all of the actions were taken consensually."   The court concluded that Defendant's comments to law enforcement at the scene were "spontaneous, voluntary, [and were made] without any coercion or compulsion" and that once Defendant was taken to the jail, "*Miranda* warnings were issued and subsequent statements are certainly admissible."   (*Id*. at 103).

From Defendant's memorandum, it is clear that Defendant's primary quarrel is not with the court's application of the law, but rather with the factual assessment of witness credibility, which led to the unfavorable ruling.   This court's review of the transcript of the proceedings does not suggest error.   Once the district court determined, based on the officers' testimony, that the encounter was consensual, there was no basis for the court to find that Defendant had been detained.

On appeal, a district court's denial of a motion to suppress is a mixed question of law and fact.   *United States v. Welch*, 683 F.3d 1304, 1307 (11th Cir.2012); *United States v. Frank*, 599 F.3d 1221, 1228 (11th Cir.2010).   The appellate court reviews factual findings for clear error, and conducts a de novo review of the district court's application of the law to those facts.   *Welch*, 683 F.3d 1307.   The reviewing court construes all facts in the light most favorable to the party that prevailed before the district court.   *United States v. Woods*, 506 F. App'x 979, 981 (11th Cir. 2013) (citing *United States v. Boyce*, 351 F.3d 1102, 1105 (11th Cir.2003)).   In the case at bar, Defendant suggests only that his own version of events was more credible than the testimony of the two law enforcement officers.   Defendant offers no other argument that appellate counsel could or should have made that would have altered the outcome of his appeal.   His dissatisfaction with the court's factual determination

that the encounter with Officers Brown and Vinson was largely consensual is not alone a basis for reversal. And, having found the encounter consensual, the question of whether a search was "reasonably related in scope to the circumstances which justified the stop in the first place" is removed from the equation. Defendant has not established that appellate counsel was constitutionally ineffective for failing to pursue this issue on appeal. *Shere*, 537 F.3d at 1311.

In Ground Four, Defendant contends that trial counsel was constitutionally ineffective in that he failed to have certain witnesses testify at the suppression hearing, given that such testimony could have changed the outcome of the proceeding. Defendant did not identify either the witnesses or the nature of their testimony in his initial motion. Counsel, however, identified the witnesses in his affidavit as Clifford Bradley and Frank Carter. (Doc. 94-2 at 1). Mr. Rabby notes that Defendant provided him with the names of the two men on January 6, 2010, and he attempted on at least three occasions to contact each of the men, leaving messages on their voicemail and in one instance with another individual, but his calls were not returned. Counsel reports that he searched the Escambia County Clerk of Court and Florida Department of Corrections websites in an attempt to locate contact information for the witnesses, to no avail. Therefore, of necessity, counsel filed the motion to suppress without having spoken to the witnesses. Two days before the suppression hearing, counsel discussed with Defendant his unsuccessful efforts to contact Bradley and Carter. Nonetheless, it was not until the suppression hearing that Defendant provided another phone number for Mr. Bradley. Counsel called Bradley, and after speaking with him and determining that Bradley "supported Defendant's assertions," counsel obtained Bradley's address and subpoenaed him for trial. Mr.

Bradley brought witness Carter, who was the passenger in Defendant's vehicle, with him when he appeared for the trial.  (Doc. 94-2 at 1–2).

Counsel's performance with respect to the witnesses' presence at the suppression hearing was not objectively unreasonable.  Although Defendant blithely claims that counsel "decided" not to interview Frank Carter before the suppression hearing, the record reflects that counsel made multiple attempts to contact each of the witnesses using information Defendant himself had provided, and even attempted to ascertain their location through other means.  Defendant does not suggest what other steps a reasonable attorney would have made to locate the individuals.  Furthermore, the court notes that once counsel was able to communicate with Mr. Bradley, he obtained a subpoena for Bradley to appear at trial, and through his contact with Bradley presumably was also instrumental in securing Mr. Carter's appearance at trial.

Defendant has also failed to establish prejudice.  After Bradley and Carter testified at trial (doc. 66 at 94–142), counsel renewed the motion to suppress.  (Doc. 66 at 142–143).  The court denied the motion, clearly finding that the testimony of the two men did not alter its previous determination that the testimony of the law enforcement officers was credible and the encounter was consensual.  (*Id*. at 143).  Defendant now maintains that had Carter testified at the suppression hearing, additional evidence would have been adduced through a different focus of the questioning.  For instance, Defendant avers in an affidavit that "upon information and belief," Carter would have testified that law enforcement walked past Defendant's vehicle numerous times prior to shining a flashlight inside, so that the stated reason for looking in the vehicle, to ascertain if another individual was inside, was pretext.

(Doc. 98 at 19).  Ignoring for the moment the fact that the affidavit was presented by Defendant and not Carter, whether Carter would have been able to testify as Defendant suggests is questionable.  At trial, Carter was unequivocal in his testimony that the encounter with law enforcement occurred at around 3:30 in the afternoon, in broad daylight.  (Doc. 66 at 129, 136).  Carter's credibility was further called into question by his testimony that at the time, he had "just really ... got started drinking" and had had "about six beers."  (*Id*. at 129).

Therefore, after a review of the record, the undersigned concludes that Defendant has not shown constitutional error or that he is entitled to relief on these claims.

<u>Defendant's Status as a Convicted Felon</u>–Grounds Three, Six and Ten

Defendant's third, sixth and tenth grounds for relief are based on his assertion that he is not a convicted felon and as such could not have been convicted of a violation of § 922(g).

As an initial matter, the court notes that Defendant stipulated to his status as a convicted felon prior to trial.  (Doc. 78 at 40–41).  By entering into this stipulation, Defendant waived the right to require the Government to prove beyond a reasonable doubt that he is a convicted felon.  *United States v. Branson*, 482 F. App'x 527, 528 (11th Cir. 2012) (citing *United States v. Hardin*, 139 F.3d 813, 816 (11th Cir. 1998)).

Even assuming for the sake of argument that Defendant's claim is not subject to a procedural bar, it is without merit.  Defendant's assertion appears to be based on the fact that he actually served less than one year in custody as a result of his prior convictions, including an eleven month sentence for a violation of probation in connection with a felony offense.  Section 922(g)(1), however, does not require that

a prior conviction actually entail a sentence of more than one year. Rather, the statute proscribes possession of a firearm by individuals who have been convicted in any court of a crime "*punishable* by imprisonment for a term exceeding one year." (Emphasis added). Therefore, the sentence actually imposed in a particular case is not dispositive.

Defendant's PSR reflects that he was convicted of aggravated fleeing or attempting to elude a law enforcement officer. (Doc. 69, PSR, ¶ 36). Section 316.1935, Florida Statutes, governs such conduct. Although there are numerous manners in which the statute can be violated, any violation of the statute is either a first, second, or third degree felony. A defendant convicted of a third degree felony, the least serious grade of felony, may receive a term of imprisonment of up to five years under Florida law. § 775.082(3)(e), Fla. Stat. Therefore, Defendant's conviction, punishable by more than one year imprisonment, qualified as a felony conviction under § 922(g)(1).

Defendant also argues that under the specific circumstances of his case, he could not have received a sentence of one year or more based upon his "sliding score" under the Florida Criminal Punishment Code. Again, § 922(g) refers generally to a crime punishable by a term exceeding one year and does not require that a specific individual have been punished by, or sentenced to, a term exceeding one year. As the Supreme Court recognized in *Dickerson v. New Banner Institute*, 460 U.S. 103 (1983), "[i]t was plainly irrelevant to Congress whether the individual in question actually receives a prison term; [§ 922(g)] imposes disabilities on one convicted of 'a crime punishable by imprisonment for a term exceeding one year.' " *Id*. at 113; *see also United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999) (citing *Dickerson*).

Thus, examination of the underlying circumstances of a particular Defendant's case or how the state sentencing guidelines may have applied in his case, as Defendant urges in his supplement, is not required.

Finally, Defendant suggests that he is entitled to relief pursuant to the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 130 S.Ct. 2577 (2010). This case, which considered the question of whether simple drug possession charges are felonies for the purpose of determining whether an alien defendant should be removed, is inapposite.

Because there is no merit to Defendant's underlying substantive claim, neither trial nor appellate counsel was constitutionally ineffective for failing to pursue it, and Defendant is not entitled to relief on Grounds Three, Six and Ten.

<u>Appellate Counsel's Failure to Raise Additional Grounds for Relief</u>--Ground Nine

Defendant contends that appellate counsel was constitutionally ineffective for failing to raise any grounds for relief beyond the one he was directed by the appellate court to raise. The only issues Defendant identifies are the same issues raised in the instant motion, which the undersigned has determined to be without merit. Counsel was not constitutionally ineffective for failing to raise the grounds already discussed in this report, and Defendant has identified no other potentially meritorious issues. As such he has shown neither constitutionally deficient performance nor prejudice and he is not entitled to relief.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The amended motion to vacate, set aside, or correct sentence (doc. 92) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

Case Nos. 3:09cr90/LAC/CJK; 3:13cv84/LAC/CJK

At Pensacola, Florida, this 14th day of August, 2015.


                                    /s/ *Charles J. Kahn, Jr.*
                                    **CHARLES J. KAHN, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.